ATTACHMENT 1-A

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Millennium, L.P. v. Dakota Imaging, Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
MILLENNIUM, L.P., Plaintiff,
v.
DAKOTA IMAGING, INC., Defendant.
No. 03 Civ. 1838(RWS).

Dec. 15, 2003.

Background: Owner of patents covering information processing methods and systems brought patent infringement action. Alleged infringer moved to dismiss or for transfer of venue.

Holdings: The District Court, Sweet, J., held that:

(1) owner established prima facie case that alleged infringer was subject to personal jurisdiction in district under "transacting business" provision of New York's long-arm statute;

(2) alleged infringer was subject to personal jurisdiction in district under provision of New York's long-arm statute addressing the commission of tortious acts within jurisdiction;

(3) action could have been brought in transferee court, as required for transfer of venue; and

(4) interests of justice and convenience of parties and witnesses supported transfer of venue.

Motion to dismiss denied; motion to transfer granted.
West Headnotes
[1] Constitutional Law 92 3965(4)

92 Constitutional Law
 92XXVII Due Process
  92XXVII(E) Civil Actions and Proceedings
   92k3961 Jurisdiction and Venue
    92k3965 Particular Parties or Circumstances
     92k3965(4) k. Manufacture, Distribution, and Sale. Most Cited Cases
     (Formerly 92k305(5))

Patents 291 288(3)

291 Patents
 291XII Infringement
  291XII(C) Suits in Equity
   291k288 Jurisdiction
    291k288(3) k. Residence and Place of Infringement. Most Cited Cases
Patents owner established prima facie case that, pursuant to due process principles and "transacting business" provision of New York's long-arm statute, alleged infringer was subject to personal jurisdiction in New York district court, making venue proper in that district under statute governing venue in patent infringement actions, inasmuch as alleged infringer purposefully availed itself of privilege of conducting activities in district when it participated in two trade shows in district, such that it should reasonably have anticipated being haled into court there, and substantial relationship existed between owner's patent infringement claim and alleged infringer's purported conduct in marketing its allegedly infringing goods at trade shows, in hopes of making eventual sales. U.S.C.A. Const.Amend. 14; 28 U.S.C.A. §§ 1391(c), 1400(b); McKinney's CPLR 302(a)(1).

[2] Constitutional Law 92 3965(4)

92 Constitutional Law
 92XXVII Due Process
  92XXVII(E) Civil Actions and Proceedings
   92k3961 Jurisdiction and Venue
    92k3965 Particular Parties or Circumstances
     92k3965(4) k. Manufacture, Distribution, and Sale. Most Cited Cases
     (Formerly 92k305(5))

Patents 291 288(3)

291 Patents
 291XII Infringement
  291XII(C) Suits in Equity
   291k288 Jurisdiction
    291k288(3) k. Residence and Place of Infringement. Most Cited Cases
By offering its allegedly infringing products for eventual sale at two trade shows within district, alleged infringer of patents covering information

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

processing methods and systems subjected itself to personal jurisdiction in district under due process principles and provision of New York's long-arm statute addressing the commission of tortious acts within jurisdiction, making venue proper in district pursuant to patent infringement venue statute. U.S.C.A. Const.Amend. 14; 28 U.S.C.A. §§ 1391(c), 1400(b); McKinney's CPLR 302(a)(2).

[3] Patents 291 288(4)

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k288 Jurisdiction
           291k288(4) k. Regular and Established Place of Business. Most Cited Cases
Provision of statute governing venue in patent infringement cases which required that defendant commit acts of infringement and have regular and established place of business within district did not provide basis for venue in action in which alleged infringer did not have regular and established place of business in district in which action was brought, had no property or storage facilities, bank accounts, or telephone listings in that district, and had no clients from which it derived revenue in district. 28 U.S.C.A. § 1400(b).

[4] Federal Courts 170B 133

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue
         170BII(B)3 To What District Action May Be Transferred
           170Bk133 k. Particular Determinations. Most Cited Cases
Patent infringement action could have been brought in District of Maryland, as required for transfer of venue to that district from Southern District of New York, when alleged infringer was Maryland-based corporation with its principal place of business in Maryland, such that it was subject to personal jurisdiction in Maryland and thus "resided" there for purposes of venue statute applicable to patent infringement actions. 28 U.S.C.A. §§ 1391(c), 1400(b), 1404(a).

[5] Federal Courts 170B 110

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue

         170BII(B)1 In General; Venue Laid in Proper Forum
           170Bk106 Determination in Particular Transferable Actions
              170Bk110 k. Patents, Copyrights and Trade Regulation. Most Cited Cases
Interests of justice and convenience of parties and witnesses supported transfer of venue of patent infringement action, inasmuch as transferee district was locus of operative facts, as place in which design, manufacture, testing, marketing, and sale of allegedly infringing products occurred, relevant documents were located in transferee forum, neither party resided in transferor forum, convenience of majority of witnesses favored forum transfer, all of alleged infringer's witnesses were located within transferee court's district and thus subject to that court's subpoena power, patent law was federal law within skills of any federal district court, and patent owner's choice of forum, which had no material connection with action and was not place of owner's residence, was entitled to little weight. 28 U.S.C.A. § 1404(a).

Zimmerman & Levi by: Jena-Marc Zimmerman, Esq., Of Counsel, Westfield, NJ, for Plaintiff.
Lowenstein Sandler, P.C. by: Steven M. Hecht, Esq., Of Counsel, Roseland, NJ, Whitford, Taylor & Preston, L.L.P. by: Steven E. Tiller, Esq., Of Counsel, Baltimore, MD, for Defendant.

*OPINION*
SWEET, District Judge.
\*1 Defendant Dakota Imaging, Inc. ("Dakota") has moved to dismiss the complaint of plaintiff Millennium, L.P. ("Millennium") for failure to comply with the venue requirements of 28 U.S.C. § 1404(b), pursuant to Federal Rules of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1406(a), or in the alternative, to transfer venue to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a).

For the reasons set forth below, Dakota's motion to dismiss is denied, and its motion to transfer venue is granted.

*Prior Proceedings*

This action was commenced on March 17, 2003. This motion was heard and marked fully submitted on September 10, 2003.

*Facts*

The facts set forth are based on the complaint and the parties' supporting declarations.

Millennium is a limited partnership organized and existing under the laws of the Cayman Islands, with its principal place of business located at P.O. Box 500, Georgetown, Grand Cayman, Cayman Islands. Mitchell Medina ("Medina"), a resident of New York City, is the principal of Millennium, responsible for running Millennium's affairs. Millennium is the owner of U.S. patents, covering information processing methods and systems.

Dakota is a Maryland corporation, whose principal place of business is located at 1730 Minstrel Way, Suite 130, Columbia, Maryland. Dakota develops and customizes automated data capture and processing systems.

Millennium claims that Dakota sells software products that infringe their patents to customers throughout the United States.

Dakota writes, programs, tests, and markets its software products in Columbia, Maryland. Eighty percent of Dakota's employees-seventy-six employees-work and reside in Maryland. These include Dakota's software engineers, development engineers, customer service representative, and professional services personnel. Dakota has small satellite offices in Atlanta, Georgia and Dallas, Texas, employing approximately twenty individuals combined. Dakota also employs four employees as project managers and sales representatives working from their homes in Colorado, Arizona, Massachusetts and Florida. Dakota does not have any employees located in the Southern District of New York.

Dakota further has business relations with Kodak and IBM, two multi-national companies. Dakota purchases hardware manufactured by Kodak and IBM from licensed distributors located in Ohio and Maryland and then resells the hardware from its offices in Columbia.

Dakota has one client using its software in Albany, New York and another in East Syracuse, New York- both in the Northern District of New York.

Dakota attended two digital imaging and publishing trade shows in New York City, AIM 2001 and ECC 2003. AIM 2001 was a national conference of approximately 350 vendors to educate both vendors and clients about Enterprise Content Management and its latest applications and technologies. ECC 2003 was a multi-national conference aimed to educate life, health, and disability claim professions, as well as other professionals involved in the claims settlement process. The parties dispute whether or not infringing products were actually sold at these trade shows.

*I. Motion to Dismiss for Improper Venue*

A. *The Venue Standard*

*2 Under 28 U.S.C. § 1400(b), "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Thus, "there are two possibilities for venue in a patent infringement case: (1) the district where the defendant 'resides'; or (2) the district where the defendant has 'committed acts of infringement' and has a regular place of business." *Dimensional Media Assocs., Inc. v. Optical Prods. Dev. Corp.*, 42 F.Supp.2d 312, 316 (S.D.N.Y.1999). In this case, it is sufficient that subsection (1) is satisfied for there to be venue.

B. *Millennium Has Satisfied the First Alternative for Venue under 28 U.S.C. § 1400(b)*

In determining where a defendant "resides," the court looks to 28 U.S.C. § 1391(c), which provides that:
[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State; and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

See also *Dimensional*, 42 F.Supp.2d at 316. Thus, for purposes of the patent infringement venue statute, "a corporation 'resides' in any district in which it is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

subject to jurisdiction, including ... any district in which it is subject to long-arm jurisdiction." *Id.*

"Personal jurisdiction over a non-resident defendant 'is governed by the law of the state in which the court sits-subject, of course, to certain constitutional limitations of due process." *Dimensional, 42 F.Supp.2d at 317* (quoting *Kronisch v. United States, 150 F.3d 112, 130 (2d Cir.1998)*). New York's long-arm statute, N.Y. C.P.L.R. ("CPLR") § 302 provides for personal jurisdiction over a non-domiciliary defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state," CPLR § 302(a)(1), or "commits a tortious act within the state," CPLR § 302(a)(2).

"A court's exercise of personal jurisdiction over a foreign defendant comports with due process if a party has sufficient minimum contacts with it, should reasonably expect to defend a lawsuit there, and avails itself of the benefits of the forum." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 869 F.Supp. 152 (S.D.N.Y.1994)* (citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Burger King v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)*).

*3 Although Millennium benefits from a favorable construction of its submissions in a motion pursuant to Rule 12, it also bears the burden of proving a *prima facie* case for jurisdiction over Dakota in order to survive a motion to dismiss. *Dimensional, 42 F.Supp.2d at 317; Pilates, Inc. v. Pilates Inst., Inc., 891 F.Supp. 175, 178 (S.D.N.Y.1995); Nat'l Cathode Corp. v. The Mexus Co. ., 855 F.Supp. 644, 646 (S.D.N.Y.1994)*. Millennium, however, will "be found to have met [its] burden even if the moving party makes contrary allegations that place in dispute the factual basis of [its] prima facie case." *Pilates, 891 F.Supp. at 178*. Until an evidentiary hearing is held, Millennium need not prove jurisdiction by a preponderance of the evidence. *Dimensional, 42 F.Supp.2d at 317; Pilates, 891 F.Supp. at 178 n. 1; Nat'l Cathode Corp., 855 F.Supp. at 647*.

### 1. *Dakota Transacted Business within the Southern District of New York under CPLR § 302(a)(1)*

CPLR 302(a)(1) is a "single-act" statute, requiring only that one transaction occur within the Southern District of New York. *Dimensional, 42 F.Supp.2d at 317; Pilates, 891 F.Supp. at 179*. However, in order to accord with due process, Dakota's activities must have been "purposeful," and there must be "an articulable nexus" or "substantial relationship" between Millennium's claim and the actions that occurred in the state. *Dimensional, 42 F.Supp.2d at 317* (quoting *Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198-99, 522 N.E.2d 40 (1988)*). See also *Rocket Jewelry Box, 869 F.Supp. 152 at 156*. Thus, in order for there to be jurisdiction, "the relationship between the activity and the claims presented by plaintiff [must be] sufficiently substantial and direct that [the defendant] could have foreseen the possibility that it might be haled into a New York court to defend itself." *Pilates, 891 F.Supp. at 179*.

Here, Millennium claims that Dakota had substantial and continuous contacts with the Southern District of New York that include conducting promotional activities and establishing business relationships, as well as selling infringing products to New York-based customers. However, Millennium fails to allege any sale by Dakota to any client in the Southern District of New York. Dakota has only two clients in the State of New York, and both of them are in the Northern District of New York. Dakota's business relations with Kodak and IBM, two multi-national companies, is further unavailing since contacts are not in the Southern District of New York. Dakota purchases hardware manufactured by Kodak and IBM from licensed distributors located in Ohio and Maryland and then resells the hardware from its offices in Columbia.

[1] Dakota, however, attended two trade shows in the Southern District of New York, AIM 2001 and ECC 2003. Through these trade shows, Dakota "purposefully availed itself of the privilege of conducting activities" such that it "should reasonably anticipate being haled into Court" in the Southern District of New York. *Burger King, 471 U.S. at 474*. There further is "an articulable nexus" or "substantial relationship" between Millennium's patent infringement claim and the actions that occurred in the Southern District since Millennium alleges that Dakota offered its infringing goods at these trade shows. *Dimensional, 42 F.Supp.2d at 317*. Therefore, the exercise of personal jurisdiction over Dakota comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co., 326 U.S. at 316*.

*4 This case is governed by the *National Cathode, Xedit Corporation,* and *Maruzen* cases, where this Court has held that participation in a trade show is sufficient to confer personal jurisdiction over a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant. In *National Cathode,* the Court held that attending an industry show is purposeful availment since "a defendant is found to have transacted business where, as here, an agent for the defendant 'physically entered the forum ... and discussed business' in an initial contact at a trade show." *Nat'l Cathode Corp.,* 855 F.Supp. at 647 (quoting *Xedit Corp. v. Harvel Indus. Corp., Fidelipac,* 456 F.Supp. 725, 728 (S.D.N.Y.1978)).

Dakota argues that *National Cathode* is inapposite here because in that case claims arose out of a contract created at the trade show. Dakota explains that its software product is not a "shelf-type item" capable of being offered for sale at trade shows.[FN1] (Dakota Reply Mem. at 5 n. 1.) Rather, Dakota attends trade shows to market its services, which Dakota likens to advertising in a national publication insufficient to warrant jurisdiction. However, there is an important distinction between advertising in a national publication and attendance at a trade show. As stressed in *National Cathode,* "agents of the defendant physically entered" the Southern District of New York. *Nat'l Cathode Corp.,* 855 F.Supp. at 647. Furthermore, Dakota's agents "engaged in discussions that were essential to the formation of" subsequent business contracts with the prospective customers they met at the trade show. *Id.* Even if Dakota's version of events is accepted, and sales were not made and contracts not entered into on the spot, this was only because, as Dakota explains, this is not feasible given the nature of Dakota's products. Thus, the fact that immediate sales did not take place was not because the goods were not being offered for sale, but rather because this was not feasible given their nature. Dakota itself concedes that its purpose in entering these trade shows was to market its services. It should, therefore, come as no surprise to Dakota that it would be subject to the jurisdiction of the Southern District of New York in offering infringing goods in the hopes of eventual sale at these trade shows.

> FN1. Whether sales actually took place at the trade shows is a matter of factual dispute between the parties. At this point, Millennium need only establish a prima facie case. Only after an evidentiary hearing is held need it prove jurisdiction by a preponderance of the evidence. *Dimensional,* 42 F.Supp.2d at 317; *Pilates,* 891 F.Supp. at 178 n. 1; *Nat'l Cathode Corp.,* 855 F.Supp. at 647.

In this way, for jurisdiction to attach, it is sufficient for goods to be offered in the hopes of eventual sales and for the defendant to engage in discussions leading to the formation of business contracts with prospective customers. To conclude otherwise would unreasonably immunize defendants who offer goods that are not shelf-type items from jurisdiction.

In *Xedit Corp.,* 456 F.Supp. at 728, the Court likewise held that participating in a trade show and physically entering a forum to discuss business is sufficient to warrant jurisdiction.[FN2]

> FN2. It is irrelevant that the Court in *Xedit Corporation* ultimately found that there was no jurisdiction because there was no connection between the trade show meeting and the plaintiff's claim. *Xedit Corp.,* 456 F.Supp. at 729 (denying jurisdiction because "[h]ere, the allegedly tortious activities were sufficiently separated by time and geography, and sufficiently different in quality, from defendants' New York activities that the plaintiff's claim does not arise out of the transaction of business by the defendants in New York."). Here, by contrast, there is a substantial connection since Millennium alleges that Dakota offered its infringing goods at the trade show.

Similarly, in *Maruzen Int'l, Co., Ltd. v. Bridgeport Merchandise, Inc.* 770 F.Supp. 155, 160 (S.D.N.Y.1991), the Court found personal jurisdiction over a defendant who "maintained a booth and entered its toys and novelty products in a toy fair held in New York's Javits Center, apparently soliciting sales and conducting business such that its products would potentially enter New York's stream of commerce." Thus, here, it is insignificant whether or not Dakota actually sold the allegedly infringing products in the district. Dakota entered the trade shows in the district in order to solicit business, and it was conceivable that products displayed at the trade show would enter the stream of commerce in the district.

**2. *Dakota Committed a Tortious Act within the Southern District of New York under CPLR § 302(a)(2)***

*5 [2] CPLR § 302(a)(2) "requires no specified level of activity within the state, but only that plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

suffer some damage as a result of a tortious act committed" in the jurisdiction. *Rocket Jewelry Box, 869 F.Supp. 152 at 156* (quoting *Honda Assocs., Inc. v. Nozawa Trading, Inc., 374 F.Supp. 886, 887 (S.D.N.Y.1974)*). In patent cases, the tortious act occurs where products are distributed and infringing sales are made. *E.g., Faberware Inc. v. Alternative Pioneering Sys., Inc.,* No. 90 Civ. 4163, 1991 U.S. Dist. LEXIS 11666, at *1 (S.D.N.Y. Jan. 24, 1991) (finding personal jurisdiction and thus venue "based upon sales in and direct shipments of ... products into [a] District.").

Here, it is unclear whether sales were actually made at the trade shows in the Southern District of New York. However, in any case, Dakota solicited sales and offered its goods at the trade shows in the hopes of eventual sale. In the trademark context, courts have held that "offering one copy of an infringing work for sale in New York ... constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers." *Pilates,* 891 F.Supp. at 180 (citations omitted); *see also Honda Assocs.,* 374 F.Supp. at 886. The emphasis is on where the infringing good are offered and "passed off," not on where actual sales take place. *Pilates,* 891 F.Supp. at 180; *German Educ. Television Network, Ltd. v. Oregon Public Broadcasting Co.,* 569 F.Supp. 1529, 1532 (S.D.N.Y.1983).[FN3] Focusing on a need for actual sales would lead to the absurd result of rewarding unsuccessful infringers and only penalizing successful ones, and this would draw an unreasonable distinction between those who offer goods for immediate sale and those who offer goods that are not shelf-type items.

> FN3. The *GETN* case was decided in 1983, prior to the 1988 amendment of 1391(c), the general corporate venue statute, which broadened the definition of venue to provide that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Rocket Jewelry Box,* 869 F.Supp. at 155.

Again, this satisfies the due process clause because by offering infringing goods in the Southern District of New York, Dakota "purposefully availed itself of the privilege of conducting" business in the Southern District of New York. *Burger King,* 471 U.S. at 474.

### C. *Millennium Has Not Satisfied the Second Alternative for Venue under 28 U.S.C. § 1400(b)*

[3] The second alternative for venue pursuant to 28 U.S.C. § 1400(b) requires that "defendant has committed acts of infringement and has a regular and established place of business" in the Southern District of New York. This standard is not met in this case as Dakota has no "regular and established place of business" in the Southern District of New York. Millennium's opposition to Dakota's motion focuses solely on New York's long-arm statute and does not even contest this point. Dakota owns no property or storage facilities in the Southern District of New York, it has no bank accounts in this District, and it is not listed in the New York telephone or classified directory. Dakota further has no clients in the Southern District of New York, deriving no revenue from this district.

### II. *Motion to Transfer Venue*

*6 Dakota has additionally moved to transfer this action to the District of Maryland pursuant to 28 U.S.C. § 1404(a) which provides that:
For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden is on the moving party, here defendants, to make a clear and convincing showing that transfer is proper. *Factors Etc. Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978); *Bionx Implants, Inc. v. Biomet, Inc.,* No. 99 Civ. 740, 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999). Defendants must demonstrate that: (i) "the action could have been brought in the district to which transfer is proposed, "the transferee forum," and (ii) "the transfer would serve the convenience of the parties and witnesses and is in the interests of justice." *Id.* at *2, *3 (S.D.N.Y. May 27, 1999); *Accord Orb Factory Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203, 208 (S.D.N.Y.1998).

### A. *The Action Could Have Been Brought in the District of Maryland*

[4] As discussed above, venue in a patent infringement action is governed by 28 U.S.C. § 1400(b), which provides in relevant part that: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides...."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 7
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Pursuant to 28 U.S.C. § 1391(c), a defendant corporation resides in any judicial district in which it is subject to personal jurisdiction at the time the action commences. *Wechsler v. Macke Int'l Trade, Inc.*, No. 99 Civ. 5725, 1999 WL 1261251, at *3 (S.D.N.Y. Dec.27, 1999) (citing *Dimensional*, 42 F.Supp.2d 312). As Dakota is a Maryland-based corporation with its principal place of business in Columbia, Maryland, it is subject to personal jurisdiction and thus resides in the District of Maryland. Accordingly, venue properly lies in the District of Maryland, and this action initially could have been brought there.

### B. *A Transfer to the District of Maryland Would Serve the Interests of Convenience and Fairness*

[5] To determine whether a transfer would serve the interests of convenience and fairness, courts consider the following factors: (1) the place where the operative facts occurred (the locus of operative facts); (2) the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel attendance; (6) the forum's familiarity with the governing law; (7) the plaintiff's choice of forum; and (8) trial efficiency and the interests of justice based on the totality of the circumstances. *Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574, 577 (S.D.N.Y.1998) (citations omitted); *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996). This determination "lie[s] within the broad discretion of the district court," and consideration is based "upon notions of convenience and fairness on a case-by-case basis." *Id.* (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992)). *See also Bionx*, 1999 WL 342306, at *3 ("Section 1404(a) allows a district judge considerable discretion in adjudicating a motion for transfer according to an 'individualized case-by-case consideration of convenience and fairness.' ") (citing *In re Cuyahoga*, 980 F.2d at 117).

#### 1. *The Locus of Operative Facts*

*7 In an action for patent infringement, the transferee forum is the locus of operative facts if the "design, development, and some of the marketing of the product allegedly infringing plaintiff's patent occurred in the transferee forum and the designers, developers, and marketers live and work in that forum." *Weschler*, 1999 WL 1261251, at *3; *Bionx*, 1999 WL 342306, at *4; *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 482 (S.D.N.Y.1993). Here, the District of Maryland is the locus of operative facts as the design, manufacture, testing, marketing, and sale of Dakota's allegedly infringing product took place there.

*Weschler* and *Bionx* further held that even sales in the transferor district were insufficient to create a material connection in the absence of other factors. *Weschler*, 1999 WL 126151, at *5; *Bionx*, 1999 WL 342306, at *4 ("[C]ourts have consistently found that where defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override the other factors favoring transfer."). Here, as there have been no prior sales by Dakota in the Southern District of New York, the connection to this district is even more tenuous.

#### 2. *Access to Sources of Proof*

Additionally, the relative ease of access to sources of proof often hinges on the locus of operative facts, as that is the location of relevant documents. *Weschler*, 1999 WL 1261251, at *4. In this case, the relevant documents relating to the design, manufacture, testing, marketing, and sale of Dakota's product are located in Maryland.

#### 3. *The Convenience of the Parties*

In this case, neither party resides in the Southern District of New York. Millennium is a limited partnership organized under the laws of the Cayman Islands, with its principal place of business located in Grand Cayman, Cayman Islands. Even if it were more convenient for Millennium to remain in the Southern District of New York, the parties' convenience becomes a "neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Weschler*, 1999 WL 1261251, at *6; *Federman Assocs. V. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, *2 (S.D.N.Y. April 8, 1997).

#### 4. *The Convenience of the Witnesses*

Here, neither party has provided a list of witnesses to be called in this case, making the convenience of witnesses difficult to evaluate. "A party seeking to transfer based on the convenience of witnesses must provide the court with a list of probable witnesses

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 8

who will be inconvenienced by the current forum and a general statement of what the witness's testimony will cover ..." *Weschler* 1999 WL 1261251, at *6.

Thus, Dakota does not fulfill its burden, but it does indicate that in support of its defense it would call officers and employees at its principal office in Maryland, and the District of Maryland would be the most convenient forum for them. Millennium, in turn, responds that its principal, Mitchell Medina, is a likely witness and resides in New York City, but points to no other witnesses in New York City.

*8 The current record, including the locus of operative facts, seems to indicate that the convenience of the majority of witnesses would favor a forum transfer to the District of Maryland. However, as the record is incomplete, this motion cannot be decided on this basis alone.

### 5. The Availability of Process to Compel Attendance

Dakota further argues that the availability of process to compel the testimony of its witnesses supports transfer to the District of Maryland. This is the case as all of Dakota's witnesses are located in Maryland and thus within the subpoena reach of the District of Maryland. Millennium does not refute this contention.

### 6. The Governing Law

The forum's familiarity with the governing law favors neither the Southern District of New York nor the District of Maryland. Patent law is federal law and "any district court may handle a patent case with equal skill." *Bionx*, 1999 WL 342306, at *5; *Recoton*, 999 F.Supp. at 577.

### 7. The Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to "substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir.1995). "However, when a plaintiff brings a suit in a forum that has no material connection with the action, this factor should be given little weight." *Brown*, 1996 WL 257614, at *3 (citations omitted); *Weschler*, 1999 WL 126151, at *9 (same); *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952, 1999 WL 540443, at *8 (S.D.N.Y. July 26, 1999) ("A plaintiff's choice is accorded less weight where the case's operative facts have little connection with the chosen forum."). Here, neither the design and development of the allegedly infringing product, nor a single sale, took place within the Southern District of New York, thus supporting a transfer.

Millennium's choice of forum is also entitled to little weight as it has not chosen a forum in which it resides. *800-Flowers, Inc. v. Intercontinental Flowers, Inc.*, 860 F.Supp. 128, 135 (S.D.N.Y.1994) (affording plaintiff's choice of forum less weight and awarding transfer when plaintiff chose forum that neither corresponded to locus of operative facts nor was defendant's state of incorporation); *Brown*, 1996 WL 257614, at *3 (holding that a plaintiff's choice of forum is accorded "little weight" "when a plaintiff brings suit outside his home forum"); *Weschler*, 1999 WL 126151, at *9 (same).

### 8. Trial Efficiency and the Interest of Justice

In the interests of justice and trial efficiency, this action should be transferred to the District of Maryland. The locus of operative facts is in Maryland-the design, development, marketing and sale of the product took place there; all relevant documents are in Maryland; "neither party is located in the Southern District of New York," and the defendant is located in Maryland. Thus, "Plaintiff's claims have no relationship to this forum, whereas they are intimately connected to" the District of Maryland. *Brown*, 1996 WL 257614, at *3. As explained in *Brown*, the Court "may legitimately encourage trial of controversies in the localities in which they arise." *Id.* (citing *Nat'l Union Fire Ins. Co. v. Laundry*, 677 F.Supp. 704, 710 (S.D.N.Y.1987)).

### Conclusion

*9 For the reasons set forth, Dakota's motion to dismiss is denied and its motion to transfer venue to the United States District Court for the District of Maryland is granted.

Settle order on notice.

It is so ordered.

S.D.N.Y.,2003.
Millennium, L.P. v. Dakota Imaging, Inc.
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 9
Not Reported in F.Supp.2d, 2003 WL 22940488 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.