ATTACHMENT 1-B

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Millennium, L.P. v. Hyland Software, Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
MILLENNIUM, L.P., Plaintiff,
v.
HYLAND SOFTWARE, INC. Defendant.
No. 03 Civ. 3900(DC).

Dec. 10, 2003.

**Background:** Licensor of patents involving information processing method brought patent infringement action, and alleged infringer moved to transfer venue.

**Holdings:** The District Court, Chin, J., held that:

(1) action could have been brought in Ohio judicial district to which alleged infringer sought to transfer action, and

(2) convenience of parties and witnesses and interests of justice supported transfer of action.

Motion granted.
West Headnotes
[1] Federal Courts 170B ⟲133

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)3 To What District Action May Be Transferred
                170Bk133 k. Particular Determinations. Most Cited Cases
Patent infringement action could have been brought in Ohio judicial district to which alleged infringer sought to transfer action, as required by statute allowing for transfer of venue based on convenience of parties and witnesses, given that statute provided for patent infringement actions to be brought in judicial district in which defendant resided or had committed acts of infringement and had regular and established place of business, that alleged infringer, as corporation, was deemed to reside in any judicial district in which it was subject to personal jurisdiction, and that alleged infringer was incorporated in Ohio and had substantial business and personnel contacts there. 28 U.S.C.A. §§ 1391(c), 1400(b), 1404(a); 35 U.S.C.A. § 271.

[2] Federal Courts 170B ⟲110

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk110 k. Patents, Copyrights and Trade Regulation. Most Cited Cases
Convenience of parties and witnesses and interests of justice supported transfer of patent infringement action from New York to Ohio district court, inasmuch as Ohio district to which transfer was sought was where allegedly infringing products were designed, developed, and managed and where nearly all witnesses and documentary evidence was located, transfer would not cause significant inconvenience to patent licensor, whose president was solely responsible for conducting its operations, and alleged infringer's sales to New York customers and minimal presence in New York was insufficient connection to render New York the locus of operative facts for venue purposes. 28 U.S.C.A. § 1404(a); 35 U.S.C.A. § 271.

Patents 291 ⟲328(2)

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
5,258,855, 5,369,508, 5,625,465, 5,768,416, 6,094,505. Cited.

Zimmerman & Levi, LLP, By: Jean-Marc Zimmerman, Westfield, NJ, for Plaintiff.
Jones Day, By: Timothy O'Hearn, Jennifer Seraphine, Paul E. Torchia, New York, NY, for Defendant.

*MEMORANDUM DECISION*
CHIN, J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*1 In this patent infringement suit, defendant Hyland Software, Inc. ("Hyland") moves pursuant to 28 U.S.C. § 1404(a) for an order transferring the action to the United States District Court for the Northern District of Ohio. For the reasons set forth below, the motion is granted.

## BACKGROUND

### A. *Facts*

#### 1. *Millennium, L.P.*

Millennium, L.P. ("Millennium") is a patent licensing entity incorporated in the Cayman Islands as a limited partnership. (Declaration of Mitchell Medina, dated August 14, 2003 ("Medina Decl.") ¶ 5). It lists its principle place of business in Grand Cayman, Cayman Islands (Compl.¶ 1), although it has no operations or employees there. (Medina Decl. ¶ 5). Millennium's President, Mitchell Medina ("Medina"), resides in New York City and is solely responsible for the company's day-to-day operations. (Medina Decl. ¶ 4). He is also the inventor of U.S. Patent Nos. 6,094,505, 5,768,416, 5,625,465, 5,258,855, and 5,369,508 (the "Patents"). (*See id.* ¶ 3). The Patents involve an information processing method that executes the transfer, storing, and recognition of information from hard copy documents, thus enabling the end user to retrieve and sort through documents with greater efficiency and less dependence on original documents.

According to Hyland, Millennium does not transact business or have offices in New York, and is not registered to do business in New York, although it regularly attends trade shows here. (*See* Declaration of Paul E. Torchia ¶ 2). Millennium has not disputed these assertions.

#### 2. *Hyland*

Hyland is an Ohio corporation that provides software for electronically storing and managing documents. (Def's Mem. in Supp. of Mot. at 1). Its corporate headquarters and principal place of business are located in Westlake, Ohio. (Declaration of Chris Hyland, dated August 4, 2003 ("Hyland Decl.") ¶ 2). Hyland's products are designed, developed, and manufactured exclusively at the headquarters. (*Id.* ¶ 9). All of Hyland's documents, including those related to product development, product reviews, sales and marketing, finances, and licensing agreements are located there as well. (*Id.*). Additionally, all of Hyland's officers work at the headquarters and reside in Ohio and 95% of its employees reside in the Northern District of Ohio. (*Id.* ¶ 4, 8).

Hyland sells products in many states. Since 2001, New York sales have accounted for about 3.3% of its revenue; sales in the Southern District of New York have accounted for less than 1% of revenue. (*Id.* ¶ 10). Since 2001, Ohio sales have accounted for 12.5% of the company's revenue. (*Id.* ¶ 9). All of Hyland's marketing and sales activities are coordinated and directed from its Ohio headquarters and all sales are accepted in and shipped from Ohio. (*Id.*). Because national sales are conducted through independent distributors, Hyland has no employees, offices, or sales representatives in New York. (*Id.* ¶ 10). Further, none of Hyland's independent distributors are located within the Southern District of New York. (*Id.*).

*2 Millennium asserts that Hyland has traveled numerous times from Ohio to this District to present and market software that infringes Millennium's Patents. Hyland has traveled to the Southern District of New York as a sponsor of and exhibitor at two industry trade shows, one in 2001 and one 2003. (Pl.'s Opp'n to Mot. Transfer at 2; *see also* Def.'s Reply at 3). Hyland also conducts regional user group seminars throughout the country, including one held in October 2003 in the Southern District of New York. (Pl.'s Opp'n to Mot. Transfer at 2; *see also* Def.'s Reply at 3).

### B. *Procedural History*

On May 21, 2003, Millennium commenced the instant action under 35 U.S.C. § 271, claiming that Hyland infringed its Patents by "importing, making, using, offering for sale, and/or selling computer hardware, software and systems" employing the patented applications. (Compl.¶ 14). On August 4, 2003, Hyland filed this motion to transfer venue.

## DISCUSSION

Hyland's motion to transfer this action to the Northern District of Ohio is granted because the action could have been brought there and the interests of convenience and justice weigh in favor of transfer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

to Ohio.

### A. *The Action Could Have Been Brought in Ohio*

[1] "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold question in deciding transfer of venue, therefore, is whether the action could have been brought in the transferee forum. *See Intria Corp. v. Intira Corp.*, 00 Civ. 7198, 2000 U.S. Dist. LEXIS 17039, at *6 (S.D.N.Y.date, 2000); *Alexander Ins. Ltd. v. Executive Life Ins. Co.*, 90 Civ. 8268, 1991 U.S. Dist. LEXIS 10432, at *2 (S.D.N.Y. July 29, 1991).

Patent infringement suits are governed exclusively by 28 U.S.C. § 1400(b), *see Stonite Prod. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." As a corporation, Hyland is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578-79 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (holding that § 1391(c) applies to § 1400); *accord Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 194-95 (S.D.N.Y.2000).

As Hyland is incorporated in Ohio and has substantial business and personnel contacts there, this action could have been brought in the Northern District of Ohio.

### B. *Transfer to Ohio is Warranted*

[2] "The Court next considers whether the convenience of the parties and witnesses and the interests of justice warrant a transfer." *Brockmeyer v. May*, 98 Civ. 5521, 1999 U.S. Dist. LEXIS 4372, at *8 (S.D.N.Y. Apr. 6, 1999). In making this determination, courts commonly weigh a number of factors: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) a forum's familiarity with the governing law, (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of circumstances. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 1128, 1133 (S.D.N.Y.1998); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

*3 There is "no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000) (citations omitted). Decisions to transfer lie within the broad discretion of the district court and are made on a case-by-case basis. *In re Cuyahoga Equip. Corp.*, 80 F.2d 110, 117 (2d Cir.1992). Additionally, the court's discretion "will not be disturbed upon appeal without a clear showing of abuse." *Filmline Productions v. UA Corp.*, 865 F.2d 513, 520 (2d Cir.1989).

The burden rests on the moving party to make a "clear and convincing showing" that transfer under § 1404(a) is proper. *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir.1978). The court must defer to the plaintiff's choice of forum unless the balance of convenience and justice weighs heavily in favor of the defendant's proposed forum. *Citigroup Inc.*, 97 F.Supp.2d at 561 (citations omitted). Because Hyland has made a clear-cut showing that the Northern District of Ohio is where the allegedly infringing products were designed, developed, and managed, and nearly all of the witnesses and documentary evidence are located there, its motion is granted.

#### 1. *Convenience of Witnesses*

The convenience of party and nonparty witnesses is usually the most important consideration. *In re Stillwater Mining Co. Sec. Litig.*, 02 Civ. 2806, 2003 U.S. Dist. LEXIS 7983 (and consol. cases), at *9 (S.D.N.Y. May 9, 2003) (citations omitted); *Stein v. Microelectronic Pkg., Inc.*, 98 Civ. 8952, 1999 U.S. Dist. LEXIS 11375, at *7 (S.D.N.Y. July, 21, 1999) (citing *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F.Supp. 858, 868 (S.D.N.Y.1991)). When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

each district. *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 577 (S.D.N.Y.2001); *see also TM Claims Serv. v. KLM Royal Dutch Airlines,* 143 F.Supp.2d 402 (S.D.N.Y.2001). To succeed on a transfer motion, the moving party must "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Arthur Metzler & Assocs. Consulting Eng'rs, P.C. v. Group Goetz Architects, P.C.,* 01 Civ. 7253, 2002 U.S. Dist. LEXIS 7540, at *5 (S.D.N.Y. Apr. 26, 2002) (citation omitted).

This action relates to patent infringement pursuant to 35 U.S.C. § 271. The key witnesses, therefore, are those officers and employees who are involved in the design, production, and sale of the products. Furthermore, defendants plan to raise a patent invalidity defense, which also places the principle witnesses in Ohio. (*See* Answer dated August 8, 2003 ¶ 34). Hyland has clearly identified and described the subject matter of the testimony of six such witnesses, all of whom work and reside in Ohio. Moreover, as 95% of all Hyland employees reside in the Northern District of Ohio, other Hyland personnel that may testify are likely to be equally inconvenienced by suit in New York. (Hyland Decl. at ¶ 8).

*4 Plaintiff's assertion that Hyland "padded" its list of potential witnesses with unnecessary persons is unpersuasive. All the listed witnesses possess relevant knowledge, and because they hold different positions, they may offer non-cumulative testimony as to different aspects of the software's design, production, and sales.

Millennium has not identified any potential witnesses who would testify on its behalf other than Medina, and it has not demonstrated that any inconvenience would be posed by a transfer. While Medina is the sole overseer of Millennium's business, Hyland's identified witnesses are also primary managers who are important to Hyland's business. The convenience of this forum to one witness, even if he is the president of plaintiff, is outweighed by the inconvenience that would result to the many other witnesses if they were required to testify here. *See Lennco Racing Co., Inc., v. Artco, Inc.,* 953 F.Supp. 69 (W.D.N.Y.1997); *see also TM Claims Serv.,* 143 F.Supp.2d at 406.

*2. Location of Documents and Other Evidence*

The "location of documents and other evidence" also weighs in favor of transfer. In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location. *Boreal Laser, Inc. v. Coherent, Inc.,* 91 Civ. 5863, 1992 U.S. Dist. LEXIS 276, at *5 (S.D.N.Y. Jan. 13, 1992); *see also Coloplast A/S v. Amoena Corp.,* 92 Civ. 3432, 1992 U.S. Dist. LEXIS 17587, at *6 (S.D.N.Y. Nov. 18, 1992) (holding that defendant's business records pertaining to the design, manufacture, and sale of its products in its home district weigh in favor of transfer).

Millennium contends that Hyland does not make an adequate showing of inconvenience with regards to documents because portability weighs in favor of denying transfer. *See, e.g., Astor Holdings, Inc. v. Roski,* 01 Civ.1905, 2002 U.S. Dist. LEXIS 758, at *37 (S.D.N.Y. Jan. 15, 2002). While some courts require a detailed showing by the defendant of how, with respect to this factor, it would be burdened by not transferring, *see, e.g., NBA Props., Inc. v. Salvino, Inc.,* 99 Civ. 11799, 2000 U.S. Dist. LEXIS 3799, at *23-24 (S.D.N.Y. Mar. 27, 2000), other courts refrain from making this inquiry. *See, e.g., Boreal Laser,* 1992 U.S. Dist. LEXIS 276, at *5. Although it is likely that all relevant documents can be transported from state to state in some fashion, for purposes of deciding transfer, the fact that the documents are all currently located in Ohio favors transfer. *In re Stillwater Mining Co. Sec. Litig.,* 2003 U.S. Dist. LEXIS 7983, at *12.

To the extent that evidence regarding the actual Patents is necessary, Millennium does not assert any greater inconvenience by maintaining suit in Ohio as opposed to New York. The inventor of the Patents, Medina, resides in this district, but Millennium does not dispute Hyland's assertion that Millennium has no offices in this state and is not registered to do business in this state. Additionally, Millennium does not specify where it actually does business, where its documents are located, and where Medina purportedly invented the Patents.

*3. Convenience of the Parties*

*5 The convenience of the parties also weighs in favor of transfer. Hyland's corporate headquarters is located in Ohio, as are all of its officers, witnesses,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and relevant documents.

Millennium alleges that because Hyland's employees travel from Ohio to this District on a regular basis to promote and market infringing software, Hyland is not inconvenienced by suit in New York. Hyland's sales in this district, however, are very small: less than 1% of its total revenue. (Pl.'s Brief Opp. Mot. Transfer at 2; *see also* Def.'s Reply at 3). Additionally, Hyland's representatives attended only three trade shows and seminars in this district in the past two years. (*Id.*).

Nor does transfer here significantly shift the inconvenience to the other party. Because Medina is solely responsible for conducting Millennium's operations, it is likely that his time is somewhat flexible. His absence from New York would not hinder the ability of other employees-to the extent there are other employees-to conduct their responsibilities, which may be the case for Hyland should its key personnel have to travel to New York. Moreover, other than alleging that Medina lives in New York and oversees Millennium's business, Millennium does not clarify where Millennium's business actually takes place.

### 4. *Locus of Operative Facts*

The locus of operative facts is a "primary factor" in a motion to transfer venue. *ZPC 2000, Inc. v. Sca Group, Inc.,* 96 F.Supp.2d 274, 279 (S.D.N.Y.2000) (citing *Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y.1998)). In patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed. *See, e.g., Lighting World, Inc. v. Birchwood Lighting, Inc.,* 01 Civ. 4751, 2001 U.S. Dist. LEXIS 16981, at *10-12 (S.D.N.Y. Oct. 12, 2001) (citing *Wechsler v. Macke Int'l Trade, Inc.,* No. 99 Civ. 5725, 1999 U.S. Dist. LEXIS 19800, at *4 (S.D.N.Y. Dec. 27, 1999); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730 (S.D.N.Y.1998)).

In *Aerotel, Ltd.,* 100 F.Supp.2d at 197, cited by Millennium, the court held that the "locus of operative facts" factor is neutral because the enforceability and validity of a patent is not geographically dependent. There are also cases, however, that hold that the locus of operative facts is the defendant's base of operations. *See, e.g., Pergo, Inc. v. Alloc, Inc.,* 262 F.Supp.2d 122, 129-30 (S.D.N.Y.2003).

The heavy emphasis that Millennium places on the location of the sale of allegedly infringing software is misplaced because the patent infringement statute also encompasses the "making" of infringing products. Indeed, for a product to be infringing, it must be found to have incorporated elements of the patented invention before its sale has any relevance. Even if, as Millennium argues, the infringing nature of the software may be determined by end users, *i.e.,* the purchasers of the software, far more end users are located in Ohio, where Hyland sells greater amounts of the software, than in New York.

*6 Hyland's sales to customers in New York and minimal presence in this state do not constitute a sufficient connection to render New York the locus of operative facts for venue purposes. *See, e.g ., Aspex Eyewear, Inc. v. Miracle Optics, Inc.,* 01 Civ. 2671, 2001 U.S. Dist. LEXIS 18786, at *9 (S.D.N.Y. Nov. 16, 2001) (defendant's attendance at trade shows in the Southern District of New York constitutes minimum contacts sufficient for personal jurisdiction but not in determining convenience of forum). Additionally, Hyland sells products in many states. Consequently, the existence of sales in New York is not dispositive. *See Matra Et Manurhin v. Int'l Armament Co.,* 628 F.Supp. 1532, 1536 (S.D.N.Y.1986) ("Sales alone are not enough to establish a material connection to the forum if, as is true here, defendant's goods are sold in many states."), cited in *Coloplast A/S,* 1992 U.S. Dist. LEXIS 17587, at *5.

### 5. *Witnesses Within the Subpoena Power of this Court*

The availability of process to compel witnesses to testify either favors transfer or is at worst neutral. Millennium did not identify any third-party witnesses who are within the subpoena power of this Court. Any former Hyland employees who might be called to testify most likely reside in Ohio, and consequently would be more willing to testify in their home state than in New York. *See Bionx Implants, Inc. v. Biomet, Inc.,* 99 Civ. 740, 1999 U.S. Dist. LEXIS 8031, at *14-15 (S.D.N.Y. May 25, 1999). Further, these potential witnesses would be subject to process in Ohio to compel their attendance but not in New York.

### 6. *Relative Means of the Parties*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Where a disparity of means exists between the parties, the relative means between the parties is a relevant factor in determining venue. *See Aerotel, Ltd.*, 100 F.Supp.2d at 197. Because only one person is responsible for conducting its business, Millennium is a smaller company. In contrast, Hyland develops, markets, and distributes software nationwide. Hence, this factor weighs against transfer. The disparity in the size of the two companies, however, is not entitled to great weight, as neither party has represented that it would be unable to litigate in either forum.

### 7. Familiarity of Forum with Applicable Law

Familiarity with the governing law is generally given little weight in federal courts. *Astor Holdings, Inc.*, 2002 U.S. Dist. LEXIS 758, at *39 (citing *Prudential Sec. Inc. v. Norcom Dev. Inc.*, 97 Civ. 6308, 1998 U.S. Dist. LEXIS 10569, at *17 (S.D.N.Y. July 15, 1998)). In this instance, where both parties agree that the issue of federal patent law is a subject on which both courts are familiar, this factor is neutral.

### 8. Plaintiff's Choice of Forum

Although Millennium's choice of forum is entitled to some weight, it is given reduced emphasis where, as here, the operative facts upon which the litigation is brought bear little material connection to the chosen forum. *Nieves v. American Airlines*, 700 F.Supp. 769, 772 (S.D.N.Y.1988) (citations omitted).

### 9. Trial Efficiency and Interests of Justice

*7 Finally, the interests of justice dictate that this case be transferred to the Northern District of Ohio. The parties do not allege that either New York or Ohio courts would be overburdened by the litigation in their courts. As the above analysis demonstrates, New York has little connection to this action, and the center of gravity of this litigation is in Ohio. In short, the balance of factors weighs strongly in favor of transferring this action.

### CONCLUSION

For the reasons set forth above, Hyland's motion to transfer venue is granted. The Clerk of the Court is directed to transfer this case to the Northern District of Ohio.

SO ORDERED.

S.D.N.Y.,2003.
Millennium, L.P. v. Hyland Software, Inc.
Not Reported in F.Supp.2d, 2003 WL 22928644 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.